UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ARMAND JAMES n/k/a                          13-CV-5-LJV-MJR
TYNESHA KANDI ARMAND,                       REPORT AND RECOMMENDATION

                    Plaintiff,

        -v-

C.O. MOSKO, *et al.*,

                    Defendants.
_____

        This case has been referred to the undersigned for all pre-trial matters, including

preparation of a report and recommendation on dispositive motions.   (Dkt. No. 73).

Before the Court is a combined motion for summary judgment/motion to dismiss the

complaint filed by defendants C.O. Mosko, Sgt. Calleri, Sgt. Jones, C.O. Williams, and

C.O. McGrain (collectively, "defendants").   (Dkt. No. 52).   For the following reasons, it is

recommended that the motion be granted in part and denied in part.

## BACKGROUND

        Plaintiff Tynesha Kandi Armand,[1] a former inmate at multiple New York State

correctional facilities, commenced this *pro se* 42 U.S.C. §1983 action on August 25,

2011 in the United States District Court for the Eastern District of New York.   (Dkt. No.

1).   Armand's original complaint alleged that officials and employees of the New York

State Department of Corrections and Community Supervision ("DOCCS") subjected her

to harassment, retaliation, and excessive force in violation of her constitutional rights.

---

[1]        In December 2014, Armand filed a motion advising the Court that she "is scheduled to have [ ]
gendar reasignment sugury [sic] on December 11, 2014," and requesting that the Court refer to her as
Ms. Armand.  (Dkt. No. 61).  The Court granted Armand's motion and amended the caption accordingly.
(Dkt. No. 62).

The original complaint named seven defendants:  Ricky Bartlett, John Lempke, Dennis Breslin, Jennifer Osborne, Sgt. Simonson, C.O. Mosko, and C.O. Williams.  (*Id.*)  In December 2011, District Judge Nicholas G. Garaufis dismissed the claims against Bartlett, Lempke, and Breslin, referred the claims against Osborne to Magistrate Judge Cheryl L. Pollack for pretrial supervision, referred the claims against defendants Mosko and Simonson to Magistrate Judge Pollack to advise whether the claims should be transferred to the District Courts for the Western and Southern Districts of New York, respectively, and held that the complaint did not state a claim for relief against Williams, but that once a determination as to proper venue has been made, Armand may move to amend her complaint.  (Dkt. No. 6).

In January 2012, Armand moved to amend her complaint to add allegations against Williams and a claim against Calleri.  (Dkt. No. 10).   On April 18, 2012, Magistrate Judge Pollack issued a Report and Recommendation recommending, in relevant part, that Armand's claim against Mosko be severed and transferred to the Western District of New York and that her motion to amend be denied with leave to re-file in the Western District.  (Dkt. No. 20).   Before Judge Garaufis acted on Judge Pollack's Report and Recommendation, Armand filed a second motion to amend the complaint, this time seeking to add claims against unspecified defendants.  (Dkt. No. 23).

On October 11, 2012, Judge Garaufis entered an order adopting Judge Pollack's Report and Recommendation and denying Armand's second motion to amend without prejudice.  (Dkt. No. 26).  The order states, in relevant part:

> Plaintiff's claims . . . against C.O. Mosko are SEVERED and
> TRANSFERRED to the Western District of New York.
> Plaintiff's first motion to amend the Complaint is DENIED
> without prejudice to [her] ability to re-file in the appropriate
> district court once [her] claims have been transferred; if
> Plaintiff still wishes to assert claims against C.O. Williams
> and Sergeant Calleri, [she] shall direct those claims to the
> Western District of New York. Because Plaintiff's second
> motion to amend does not specify which defendants [she]
> wants to add or from whom [she] wishes to seek greater
> damages, that motion is DENIED without prejudice to
> Plaintiff's ability to file a more specific motion in the
> appropriate district court.

(*Id.* at 3-4).[2]

Pursuant to Judge Garaufis' order, Armand's case against Mosko was transferred to this Court, after which Armand renewed her motion to amend before Judge Schroeder, the Magistrate Judge initially assigned to this action. (Dkt. No. 36). Armand's proposed amended complaint contained two claims. The first claim alleged that Mosko, Calleri, Williams, and another Five Points Correctional Facility employee, believed to be Jones, retaliated against her for complaints she had made against unidentified officers at other correctional facilities, while the second claim alleged denial of medical care. (*Id.*). Judge Schroeder found both claims to be futile and denied the motion. (Dkt. No. 44). As to the first claim, Judge Schroeder ruled that Armand failed to allege any causal connection between her constitutionally protected activity and the adverse actions allegedly taken by the Five Points employees. (*Id.* at 7). With respect to the second claim, Judge Schroeder found that Armand failed to set forth specific acts or omissions or any deliberate indifference to a sufficiently serious medical need. (*Id.* at 8). Finally, Judge Schroeder noted that the proposed amended complaint appeared to allege that McGrain retaliated against Armand through the filing a false misbehavior

---

[2] Page number citations for docketed items refer to the page number(s) assigned by CM/ECF.

report.  (*Id.* at 9).  Judge Schroeder found this claim to be futile as well, since it failed to allege a causal connection between any protected activity engaged in by Armand and any retaliation — in particular, Armand failed to allege "a general time period when the alleged events occurred."  (*Id.* at 9-10).  Although Judge Schroeder denied Armand's motion, he did so without prejudice to Armand filing another motion to amend on or before March 31, 2014.  (*Id.* at 10).  In the event Armand did not file such a motion, Judge Schroeder directed the action to proceed only as to the claim against Mosko that had been transferred from the Eastern District of New York.  (*Id.*).

Armand did not file a motion to amend before March 31, 2014.  Thus, on April 3, Judge Schroeder directed service of the summons and original complaint on Mosko.  (Dkt. No. 46).  However, on June 5, Armand filed an amended complaint (the "Amended Complaint") naming Mosko, Calleri, Jones, Williams, and McGrain as defendants.  (Dkt. No. 47).  Although Armand did not file a formal motion to amend, Judge Schroeder accepted the Amended Complaint and ordered that it be served on each defendant.  (Dkt. No. 48).[3]

The Amended Complaint contains two causes of action.  The first claim alleges excessive force by Mosko, Calleri, Jones, and Williams.  (Dkt. No. 47 at 5-7).  Armand states that when she arrived at Five Points on May 17, 2011, Mosko, Calleri, and Jones escorted her from the facility's intake area to the mental health unit, when Mosko allegedly slammed her head into a gate and asked her whether she likes to assault officers.  (*Id.* at 5-6).  The three defendants proceeded to kick and stomp Armand and

---

[3]      Judge Schroeder's order does not expressly state that he screened Armand's Amended Complaint or that each of its claims states a cause of action.  In any event, the Court finds that Armand's first claim adequately states an Eighth Amendment excessive force claim, and defendants have not moved to dismiss this claim for failure to state a cause of action.  As for Armand second claim, as discussed *infra*, it adequately states a First Amendment retaliation claim with respect to the allegedly false misbehavior report McGrain filed against Armand.

ripped her hair out, despite Armand's pleas for them to stop.  (*Id.* at 6).  Jones then accused Armand of being a snitch, and threatened to cut her with a knife.  (*Id.*).  The defendants eventually let Armand stand up, although they warned her not to report any injuries.  (*Id.*).  Later, when Armand was in the infirmary, Williams allegedly grabbed her right pinky finger and bent it "all the way back."  (*Id.* at 7).

Armand's second claim alleges retaliation by McGrain at Southport.  (*Id.* at 7-8). Armand states that after DOCCS transferred her from Five Points to that facility, McGrain began to "target" her for being a snitch, apparently because Armand had commenced the instant action a few months earlier.  (*Id.*).  In particular, McGrain loudly discussed Armand's pending civil cases and called her a "rat" so as to incite other inmates and corrections officers to harm her, disclosed her confidential information, tampered with her food, and filed a retaliatory misbehavior report against her.  (*Id.*).

On October 20, 2014, in lieu of answering the Amended Complaint, defendants filed the instant combined summary judgment motion/motion to dismiss.  (Dkt. No. 52). Defendants seek summary judgment on Armand's excessive force claim on the basis that she purportedly failed to exhaust her administrative remedies, and dismissal of Armand's retaliation claim for failure to state a cause of action.  After receiving multiple extensions of time, Armand responded to the motion on May 18, 2015.  (Dkt. Nos. 64-68).  Defendants replied on July 17, 2015.  (Dkt. No. 72).  On July 13, 2016, the Court directed the parties to submit supplemental briefing on *Ross v. Blake*, --- U.S. ----, 136 S. Ct. 1850 (2016), in which the Supreme Court addressed whether any exceptions apply to the Prison Litigation Reform Act's (the "PLRA's") exhaustion requirement.

**DISCUSSION**

I.  *First Claim:  Eighth Amendment Excessive Force*

Defendants move for summary judgment on Armand's first claim on the basis that she purportedly failed to exhaust her administrative remedies.  Under the PLRA, "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. §1983] . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. §1997e(a).  "Failure to exhaust administrative remedies is an affirmative defense under the PLRA, not a pleading requirement."  *Williams v. Priatno*, --- F.3d ----, 2016 WL 3729383, at *3 (2d Cir. July 12, 2016).

In support of their exhaustion defense, defendants rely on the declaration of Patrick O'Neill, the Inmate Grievance Program Supervisor ("IGPS") at Five Points.  (Dkt. No. 54).  O'Neill states that his office searched for, but did not locate, any grievances filed by Armand concerning the alleged assault by Mosko, Williams, Calleri, and Jones.  (*Id.* ¶7).  O'Neill does note, however, that on August 28, 2012, after Armand was transferred to Southport, she sent a grievance concerning the assault to Five Points.  (*Id.* ¶¶7-8).  In a memorandum dated September 8, 2011, O'Neill rejected the grievance for the following reasons:

> [A] grievance complaint may only be filed at the facility where the inmate is housed even if it pertains to another facility.  Your grievance needs to be submitted at the facility in which you currently reside.
>
> Also, be aware that it is untimely in the extreme and is well beyond the 45-day outside limit in which an IGPS has the authority to grant an exception to the time limit for filing a grievance.

(*Id.* at 28).   Thus, according to defendants, because Armand did not properly grieve the assault, her excessive force claim should be dismissed for failure to exhaust her administrative remedies.   In opposition, Armand argues that defendants' motion should be denied as premature because the parties have not yet engaged in any discovery. (Dkt. No. 65 at 5).   Armand also argues that even if the Court reaches the merits of the motion, summary judgment should be denied because the grievance procedure defendants rely upon was not made "available" to her for several different reasons.   *See Ross*, 136 S. Ct. at 1862 ("An inmate need exhaust only such administrative remedies as are 'available.'").

The Court agrees with Armand that defendants' summary judgment motion is premature, and it is recommended that the motion be denied on this basis.   "Although a motion for summary judgment may be filed 'at any time until 30 days after the close of all discovery,' Fed. R. Civ. P. 56(b), summary judgment is generally not appropriate until after some discovery has occurred."   *Houston v. Sheahan*, No. 13-CV-6594-FPG, 2016 WL 554849, at *1 (W.D.N.Y. Feb. 10, 2016) (Geraci, C.J.).[4]   "[O]nly in the *rarest of cases* may summary judgment be granted against a plaintiff who has not been afforded the opportunity to conduct discovery."   *Hellstrom v. U.S. Dep't of Veterans Affairs*, 201 F.3d 94, 97 (2d Cir. 2000) (emphasis added).

In a recent case, *Houston v. Sheahan*, this Court denied a pre-discovery motion for summary judgment/motion to dismiss filed by the defendants.   The *pro se* plaintiff in *Houston*, like Armand in this case, filed a complaint asserting constitutional claims

---

[4]       As an example of an appropriate case, the *Houston* Court cites *Parra v. Wright*, No. 11-CV-6270CJS, 2013 WL 6669235 (W.D.N.Y. Dec. 18, 2013).   In *Parra*, this Court decided a pre-discovery summary judgment motion on exhaustion grounds because "the facts regarding Plaintiff's efforts at exhaustion are not disputed, and it does not appear that any amount of discovery would change the outcome of [the motion].").   *Id.* at *7.   *Parra* is inapplicable here because Armand's opposition papers make clear that she disputes the facts that defendants rely upon in support of their exhaustion defense.

against DOCCS employees.   In lieu of answering the complaint, the *Houston* defendants filed a combined motion for summary judgment/motion to dismiss.   Finding that defendants filed their motion "at the pleading stage, prior to any discovery," Chief Judge Geraci denied summary judgment as "premature," among other reasons. *Houston*, 2016 WL 554849, at *2.   The Chief Judge also cautioned defendants against filing "untimely, catch all motions" because they tend to confuse *pro se* litigants.   *Id.* at *3.   Other recent decisions by this Court have likewise denied pre-discovery summary judgment motions filed against *pro se* plaintiffs. *Crawford v. Hughes*, No. 13-CV-6638FPG, 2016 WL 1276473, at *5 (W.D.N.Y. Mar. 30, 2016) (Geraci, C.J.); *Nieves v. Prack*, 6:15-cv-6101EAW, --- F. Supp. 3d ----, 2016 WL 1165820, at *3 (W.D.N.Y. Mar. 24, 2016) (Wolford, J.).

Here, as in *Houston*, *Crawford*, and *Nieves*, defendants' summary judgment motion should be denied as premature.   Because defendants filed their motion in lieu of answering the complaint, the Court has not entered a scheduling order under Fed. R. Civ. P. ("Rule") 16(b), and Armand has not been able to take discovery.   The absence of discovery is highly prejudicial to Armand because defendants' exhaustion defense primarily relies on evidence outside the four corners of the Amended Complaint — in particular, testimony and documentation submitted by O'Neill, a DOCCS official with access to the grievance records at Five Points.   Armand has not been able to challenge or explore O'Neill's testimony (through interrogatories, a deposition, or otherwise), nor has she had the opportunity to request documents or other evidence to support her contention that the grievance procedure at Five Points was not made "available" to him. By filing their motion so early in the litigation, defendants have prevented Armand from

seeking this information, thereby prejudicing her ability to respond to the merits of the motion. *See Trebor Sportswear Co. v. The Limited Stores, Inc.*, 865 F.2d 506, 511 (2d Cir. 1989) ("The nonmoving party must have 'had the opportunity to discover information that is essential to his opposition' to the motion for summary judgment.") (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 n.5 (1986)).

Defendants' premature motion also presents the risk of having the exhaustion question decided on an incomplete or inaccurate record.  As a *pro se* former inmate, it is questionable whether Armand has copies of, or access to, all of the documents that she may need to challenge defendants' exhaustion defense.   Armand has not been given the opportunity to seek this information from defendants and present it to the Court, making the record in this case somewhat one-sided.  The Court has concerns about granting summary judgment against a plaintiff who has not had the opportunity to fully present her side of the story.  This is particularly true where, as here, defendants' motion primarily relies upon the testimony of their own witness.

Defendants have not explained why they opted to move for summary judgment so early in the litigation.  However, to the extent they filed an early motion in order to avoid discovery, the Court notes that it is recommending that a portion of Armand's retaliation claim survive dismissal; thus, defendants have to proceed to discovery in any event.

Accordingly, for these reasons, it is recommended that defendants' motion for summary judgment on Armand's first cause of action be denied without prejudice. Defendants may renew their summary judgment motion after Armand has had the opportunity to pursue discovery.

II.     *Second Claim:  First Amendment Retaliation*

Defendants move under Rule 12(b)(6) to dismiss Armand's retaliation claim against McGrain for failure to state a cause of action.  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).   "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.* (quoting *Twombly*, 550 U.S. at 556).   Application of the motion to dismiss standard is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

Where, as here, the plaintiff is proceeding *pro se*, the complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers."  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)); *see also Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) ("It is well established that the submissions of a *pro se* litigant must be construed liberally and interpreted 'to raise the strongest arguments that they *suggest.*'") (quoting *Pabon v. Wright*, 459 F.3d 241, 248 (2d Cir. 2006)).  That said, even a *pro se* complaint must be dismissed if it does not contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

To state a retaliation claim, Armand must allege (1) that her speech or conduct was protected; (2) that defendants took an adverse action against her; and (3) that there is a causal connection between her protected activity and the adverse action. *Dawes v. Walker*, 239 F.3d 489, 492 (2d Cir. 2001), *overruled on other grounds by Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002). Because prisoner retaliation claims are easily fabricated and may intrude into matters of prison administration, the Court must approach Armand's claim with skepticism and particular care. *Id.* at 491.

The Court will begin its assessment of Armand's claim by determining whether McGrain's alleged conduct rises to the level of an adverse action. Liberally construing the Amended Complaint, Armand alleges that McGrain: (1) loudly discussed her civil cases and accused her of being a "rat" so as to incite prison employees and other inmates to retaliate against her (Dkt. No. 47 at 8; Dkt. No. 65 at 10); (2) tampered with her food (Dkt. No. 47 at 8); (3) disclosed her personal information (*id.*); and (4) submitted a false misbehavior report against her in retaliation for a grievance she had filed (*id.*; Dkt. No. 65 at 10).[5]

An adverse action is conduct "that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights." *Dawes*, 239 F.3d at 493. Calling Armand a "rat" and discussing her civil cases does not meet this standard because Armand has not plausibly alleged that the comments risked inciting other inmates or prison employees to harm her, or that any individual did in fact injure her after having heard the comments. *Id.*; *Morales v. Mackalm*, 278 F.3d 126, 131 (2d Cir.

---

[5]     Some of the factual material supporting Armand's retaliation claim has been taken from her opposition papers. Contrary to defendants' argument (Dkt. No. 72 ¶¶12-13), the Court may consider this material in determining whether Armand has stated a claim for relief. *See Walker v. Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013) ("A district court deciding a motion to dismiss may consider factual allegations made by a *pro se* party in his papers opposing the motion.").

2002) (calling the plaintiff a "stoolie" in front of other inmates not an adverse action), *abrogated on other grounds by Porter v. Nussle*, 534 U.S. 516 (2002); *Snyder v. McGinnis*, No. 03-CV-0902E, 2004 WL 1949472, at *11 (W.D.N.Y. Sept. 2, 2004) (labelling plaintiff a "snitch" and a child molester not adverse because plaintiff did not allege that he was physically harmed as a result of the comments).  Armand's allegation that McGrain tampered with her food likewise does not state an adverse action because Armand has not provided any factual details regarding the tampering, such as when or how it occurred.  *See Snyder*, 2004 WL 1949472, at *11.  The same reasoning applies to McGrain's alleged disclosure of Armand's confidential information.  The allegations are entirely conclusory — no facts are provided as to whom the disclosures were made or whether they harmed Armand in any fashion.  There is no basis to infer that the alleged disclosures "would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights."  *Dawes*, 239 F.3d at 493.

Armand's allegations concerning her grievance against McGrain and the subsequent misbehavior report do, however, state a retaliation claim.  It is well settled that filing a grievance is a protected activity, *id.* at 492, and that a false misbehavior report is an adverse action, *Gayle v. Gonyea*, 313 F.3d 677, 682 (2d Cir. 2002) ("An allegation that a prison official filed false disciplinary charges in retaliation for the exercise of a constitutionally protected right, such as the filing of a grievance, states a claim under §1983.").  That leaves the question of whether Armand has alleged a causal connection between her grievance and the misbehavior report.  The Court finds that she has.

"[T]he temporal proximity of an allegedly retaliatory misbehavior report to a grievance may serve as circumstantial evidence of retaliation." *Id.* at 683. Although the Second Circuit has "not drawn a bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship between the exercise of a federal constitutional right and an allegedly retaliatory action," the passage of six months has been found to support an inference of causation. *Espinal v. Goord*, 558 F.3d 119, 129 (2d Cir. 2009) (quoting *Gorman-Bakos v. Cornell Coop. Extension of Schenectady Cnty.*, 252 F.3d 545, 554 (2d Cir. 2001)).

Here, the facts underlying the retaliatory misbehavior report claim took place in a matter of weeks. On January 9, 2012, Armand filed a grievance concerning continued harassment by McGrain. (Dkt. No. 67-2 at 28). Less than two weeks later, on January 21, McGrain issued Armand a misbehavior report alleging, among other charges, interference and harassment. (*Id.*). Also on January 21, Armand wrote a letter to the facility's superintendent accusing McGrain of falsifying the misbehavior report and scheming to get her transferred to another part of the facility. (*Id.* at 21-22). Four days later, on January 25, Armand filed a grievance accusing McGrain of having fabricated the misbehavior report. (*Id.* at 28). The facility then transferred Armand to a new cell on January 31. (*Id.* at 27). On February 3, Armand was found guilty of the charges in the misbehavior report, and transferred to a new housing area. (*Id.* at 29).

The short of passage of time between Armand's grievance and McGrain's allegedly false misbehavior report, along with the other factual matter supporting the claim, creates a plausible inference of causation. The allegations also remedy the deficiency noted in Judge Schroeder's prior order denying her leave to add a retaliation

claim against McGrain — namely, the failure to allege "a general time period when the alleged events occurred." (Dkt. No. 44 at 10). Accordingly, Armand has stated a retaliation claim against McGrain based on the filing of an allegedly false misbehavior report. It is recommended that this portion of Armand's retaliation claim survive dismissal.

Finally, in addition to a retaliation claim, Armand's second cause of action appears to assert a "harassment" claim. (Dkt. No. 47 at 8). To the extent Armand presses such a claim, it is recommended that the claim be dismissed because verbal harassment, without more, is not actionable under §1983. *See Purcell v. Coughlin*, 790 F.2d 263, 265 (2d Cir. 1986); *Hendricks v. Boltja*, 20 F. App'x 34, 37 (2d Cir. 2001) (summary order).

## CONCLUSION

For the foregoing reasons, it is recommended that defendants' combined motion for summary judgment/motion to dismiss the complaint be granted in part and denied in part as follows: the branch of the motion seeking summary judgment on Armand's first claim should be denied without prejudice, and the branch of the motion to dismiss Armand's second claim should be granted *except* with regard to the portion of the claim alleging that McGrain filed a false misbehavior report against Armand.

Pursuant to 28 U.S.C. §636(b)(1), it is hereby ORDERED that this Report and Recommendation be filed with the Clerk of Court.

Unless otherwise ordered by Judge Vilardo, any objections to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of service of this Report and Recommendation in accordance with the above statute, Rules 72(b),

6(a), and 6(d) of the Federal Rules of Civil Procedure, and Local Rule of Civil Procedure 72.  Any requests for an extension of this deadline must be made to Judge Vilardo.

**Failure to file objections, or to request an extension of time to file objections, within fourteen days of service of this Report and Recommendation WAIVES THE RIGHT TO APPEAL THE DISTRICT COURT'S ORDER.**  *See Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989).

The District Court will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not, presented to the Magistrate Judge in the first instance. *See Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co.,* 840 F.2d 985, 990-91 (1st Cir. 1988).

Pursuant to Local Rule of Civil Procedure 72(b), written objections "shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection, and shall be supported by legal authority."  **Failure to comply with these provisions may result in the District Court's refusal to consider the objection.**

SO ORDERED.

Dated:      July 22, 2016
            Buffalo, New York

/s/ *Michael J. Roemer*
MICHAEL J. ROEMER
United States Magistrate Judge